The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Donald C. HOWER, Defendant-Appellant.

No. 79CA0473.

Colorado Court of Appeals, Div. III.

March 5, 1981.

his co-employees of the Department of Revenue put the three kegs of beer into an evidence locker.

Shortly before the liquor license revocation hearing which ensued from Barry's investigation, a meeting was held in the office of the chief of the liquor enforcement division at which the defendant Hower, Barry's supervisor, was present. Among the matters discussed at this meeting was the chain of custody of the three kegs of beer which Barry had seized.

At Hower's trial, Barry testified that Hower had said to him, "As to the chain of custody and for the smoothness of the hearing, I want you to say that you turned the kegs over to my custody." Barry testified that, although he protested the inaccuracy of this statement, Hower reiterated that Barry was to testify at the administrative hearing in this manner. Barry's testimony was corroborated by the testimony of two other witnesses present at this meeting.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sp. Asst. Atty. Gen., David K. Rees, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Daniel T. Smith, Denver, for defendant-appellant.

KELLY, Judge.

Donald C. Hower appeals his conviction of unlawfully tampering with a witness. Section 18–8–605, C.R.S. 1973 (1978 Repl. Vol. 8). He argues that there was insufficient evidence to sustain his conviction, that the trial court erred in denying his motion to dismiss the indictment in that the state grand jury was neither properly impaneled nor authorized to indict him, and that he was prejudiced by the prosecution's failure to comply with a discovery order. We affirm.

James Barry, a liquor enforcement officer for the Department of Revenue, seized three kegs of beer from two restaurants in Fort Collins as part of an investigation of the sale of mislabeled beer. When Barry returned to his Denver office, he and two of

Hower argues that there was a variance between the charge and the proof offered at trial, resulting in insufficient evidence to sustain his conviction of tampering with a witness. His analysis is that, although the evidence shows that he may have intimidated a witness contrary to § 18–8–604, C.R.S. 1973 (1978 Repl. Vol. 8), it does not show that he unlawfully tampered with a witness. Section 18–8–604 requires a threat to the person sought to be intimidated, while § 18–8–605 does not. The evidence, Hower argues, would support a conviction of intimidation because Barry testified that he felt threatened by the order of his superior. The presence of a threat, continues Hower's argument, negates the offense of tampering.

■ We agree with the attorney general that this analysis is flawed. Three witnesses testified that Hower instructed Barry to testify falsely, yet none testified that Hower threatened or bribed Barry. There was no testimony of an overt threat by Hower, and, while it would be natural for Barry to feel threatened in the face of such a direction from his superior, his fear was sub-

jective, and at most, presented a question of fact to be resolved by the jury. Thus, the evidence supports the conviction.

Hower also challenges the validity of the indictment by the state grand jury which was impaneled pursuant to order of the chief judge of the Denver District Court. See § 13–73–101, C.R.S. 1973. The record shows that the attorney general filed a petition for an order impaneling a state grand jury alleging, among other things, that he was possessed of information concerning potential anti-trust law violations, organized crime activities, tax violations, and land fraud, requiring investigation extending over several counties. Pursuant to this petition, the chief judge ordered that a state grand jury be impaneled. A few months later, the attorney general filed a motion, supported by an affidavit, requesting that the already impaneled state grand jury be authorized to investigate suspect activities in the Department of Revenue. The court also granted this motion. It was during the investigation of the Department of Revenue that Hower's actions came to light.

It is Hower's contention that the attorney general's documents failed to comply with the statutory requirements. Section 13–73–101, C.R.S. 1973, provides:

"When the attorney general deems it to be in the public interest to convene a grand jury which has jurisdiction extending beyond the boundaries of any single county, he may petition the chief judge of any district court for an order in accordance with the provisions of this article. Said chief judge may, for good cause shown, order the impaneling of a state grand jury which shall have statewide jurisdiction. In making his determination as to the need for impaneling a state grand jury, the judge shall require a showing that the matter cannot be effectively handled by a grand jury impaneled pursuant to article 72 of this title, such a grand jury being referred to in this article as a 'county grand jury.' "

Hower argues that there was an inadequate showing in the attorney general's petition that the county grand jury could not "effectively handle the matter." We reject the argument.

It is evident from the provisions of §§ 13–73–102 and 13–73–107, C.R.S. 1973, that a state grand jury is authorized to return indictments based on offenses committed anywhere within the state. The venue of offenses committed outside the county in which the state grand jury sits is designated by the chief judge of the district court, not by the jury. Thus, the statutory purpose in authorizing the impanelment of a grand jury with statewide jurisdiction is to promote the efficiency of criminal investigations of "practices and problems extending beyond the boundaries of a [single] county." *State v. Anderson*, 120 N.J.Super. 345, 293 A.2d 752 at 754 (Law Div. 1972), *aff'd*, 132 N.J.Super. 231, 333 A.2d 291 (App. Div. 1975), *certif. denied*, 68 N.J. 143, 343 A.2d 431 (1975).

In such situations, while county grand juries sitting in the various counties of the state have the power to return indictments in their respective counties charging the commission of crimes there committed, the duplication of investigative effort and the additional expense attendant to the impanelment of multiple county grand juries militates in favor of the impanelment of a grand jury with statewide jurisdiction.

The attorney general's petition and motion specifically allege that his proposed investigation would be likely to require indictment of offenses in numerous counties across the state. Moreover, the allegations concerning the nature of the offenses sought to be investigated tend to substantiate this conclusion. Accordingly, the petition and motion were sufficient to show that the matters to be investigated by the grand jury could not be effectively handled by a county grand jury.

Hower also challenges the indictment on the ground that a county grand jury could properly have handled the investigation of this offense. This is true. However, the real issue is whether a properly impaneled grand jury may return an

indictment based on facts discovered by it during investigation of matters it is authorized to inquire into, when the facts supporting the indictment show the commission of offenses beyond its authorization. We hold that a properly impaneled grand jury does have such authority. This follows the "well-recognized power of the grand jury to consider and investigate any alleged crime within its jurisdiction." *Sullivan v. United States*, 348 U.S. 170, 173, 75 S.Ct. 182, 184, 99 L.Ed. 210 (1954); *Weinheimer v. United States*, 283 F.2d 510 (D.C.Cir.1960), *cert. denied*, 364 U.S. 932, 81 S.Ct. 381, 5 L.Ed.2d 366.

> "It is well settled that when a grand jury undertakes a *bona fide* investigation of suspected crime, facts incidentally brought to light by the grand jury are not tainted and that the government's attorneys have the obligation to use such information for any purpose consistent with the public interest."

*In re Grand Jury Investigation (General Motors Corporation)*, 32 F.R.D. 175 at 182 (S.D.N.Y.1963), *appeal dismissed*, 318 F.2d 533 (2d Cir. 1963), *petition for cert. dismissed*, 375 U.S. 802, 84 S.Ct. 25, 11 L.Ed.2d 37. *See also Granbery v. District Court*, 187 Colo. 316, 531 P.2d 390 (1975).

It is of no significance that neither Hower nor the offense of tampering with a witness were mentioned in either the attorney general's petition or motion. The grand jury

> "is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime ... [T]he identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning."

*Blair v. United States*, 250 U.S. 273 at 282, 39 S.Ct. 468 at 471, 63 L.Ed. 979 at 983 (1919).

 Hower's argument that he was prejudiced by the failure of the district attorney to produce a travel voucher and beer keg pursuant to the trial court's discovery order is without merit. Our review of the record indicates that this evidence was cumulative, that the beer keg was not admitted, and that Hower suffered no prejudice. Therefore, the alleged violation of the discovery order is not a valid ground for reversal. *See People v. Morgan*, 189 Colo. 256, 539 P.2d 130 (1975); *People v. Grubbs*, 39 Colo.App. 436, 570 P.2d 1299 (1977).

Judgment affirmed.

STERNBERG and KIRSHBAUM, JJ., concur.